IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MITCHELL CASE, a minor, by his parents, Dustin and Elizabeth Case, | )<br>)<br>) |
| Plaintiff, | )    2:07-cv-374<br>) |
| v. | )<br>) |
| ALLEGHENY INTERMEDIATE UNIT, | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court for consideration and disposition are the parties' cross-motions for judgment based on the administrative record, which are captioned as DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 16) and PLAINTIFF'S MOTION FOR DECISION ON THE ADMINISTRATIVE RECORD (Document No. 20). The Administrative Record has been provided. The issues have been thoroughly briefed (Document Nos. 17, 22, 31, 32) and are ripe for resolution.

Background

This litigation involves the services to be provided under the Individuals with Disabilities Education Act (IDEA) to Mitchell Case, a three-year-old boy with cerebral palsy. When a child turns three, he must transition from Part C of the IDEA, which provides services through the Infants and Toddlers Early Intervention program administered by the County Office of Mental Health and Mental Retardation, to Part B of IDEA, a Preschool Early Intervention program which is operated in this instance by Defendant, the Allegheny Intermediate Unit (AIU).

Mitchell received Conductive Education as part of his Individualized Family Service Plan (IFSP) that applied for ages 0-3. The family and the AIU disagree as to whether the child is entitled to continue to receive Conductive Education services as part of his Part B Individualized Education Plan (IEP). The AIU refused to provide Conductive Education, a decision that was upheld by Hearing Officer Dorothy O'Shea in a twenty-page written opinion dated December 22, 2006.

On June 28, 2007, the Court issued a Memorandum Order which granted Plaintiff's Motion to Enforce Pendency and directed the AIU to provide Conductive Education services to Mitchell until this litigation has been ultimately resolved. During an oral argument on June 27, 2007 regarding the Motion to Enforce Pendency, the parties agreed that no further evidence was needed and that the Court would resolve the merits of the litigation based solely upon the administrative record. *See* 20 U.S.C. § 1415(i)(2)(B).[1]

Standard of Review

A federal district court applies a "modified de novo review" of an administrative decision and must give "due weight" to the facts found during the administrative hearing. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 269-70 (3d Cir. 2003). Purely legal conclusions are subject to plenary review. *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995). Factual findings from the administrative proceedings are to be considered prima facie correct. *Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). The hearing officer's

---

[1]Plaintiff's Brief in Response contends that the AIU is seeking reconsideration of the pendency determination. The AIU has not clearly requested any such relief and the Court does not reach this issue.

credibility determinations are entitled to special weight, unless the non-testimonial, extrinsic evidence would justify a contrary conclusion, similar to a "clearly erroneous" standard of review. *Id.* Although the statute directs courts to base their decision on a preponderance of the evidence, that is not an invitation for courts "to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Hendrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

## Discussion

1.  The Question in Dispute

As an initial matter, the parties disagree as to the question in dispute. Plaintiff frames the question as: "whether the law ***prohibits*** Allegheny Intermediate Unit from providing an appropriate therapeutic service to Mitchell Case." Defendant frames the question as: "whether or not the AIU is ***required*** to provide Conductive Education as a related service to ensure M.C.'s free and appropriate public education." The distinction is important. Plaintiff seeks to argue a question of law regarding whether, under any circumstances, the AIU may be permitted to provide Conductive Education. Defendant, by contrast, seeks a determination that, under the specific record facts of this litigation and applicable law, there is no mandate to provide Conductive Education as part of a free and appropriate public education.

At the beginning of the Administrative Hearing, the parties agreed to the Hearing Officer's summary of the question in dispute: "[I]s the Allegheny Intermediate Unit required to provide conductive education as a related service to ensure Mitchell's free and appropriate education?" Transcript at 24. That is the question that the Hearing Officer decided and that is

3

the question that this Court will review. The issue is primarily factual, rather than legal. In other words, the primary focus is on the proposed IEP for Mitchell Case, instead of a theoretical exercise about how the relevant regulations might be interpreted.[2]

        2.       The Reasons Asserted by the AIU

At the administrative hearing, Mitchell's parents contended that because Conductive Education was not included in the proposed IEP, Mitchell had been denied a free and appropriate public education ("FAPE").[3] The AIU contended that the proposed IEP did provide Mitchell a FAPE, and presented evidence that Conductive Education was not included in the proposed IEP because: (1) there is only one Conductive Education provider in the Pittsburgh area, Krisztina Weiszhaupt, and she was not certified or licensed by the state of Pennsylvania; (2) there is no scientifically-based research to demonstrate the efficacy of Conductive Education; and (3) Conductive Education is a methodology, and as the local educational agency ("LEA"), the AIU determines methodology rather than the parents. Hearing Officer's Decision at ¶ 67; Transcript at 221-226.

Plaintiff now attempts to limit the AIU to two grounds (lack of qualified personnel and science-based research), and ignores the "methodology" justification entirely. Plaintiff bases its

---

[2]For the purpose of this decision, the Court will assume, arguendo, that it was permissible for the AIU to provide Conductive Education to Mitchell.

[3]A free, appropriate public education consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *S.H.*, 336 F.3d at 264 (citations omitted).

4

argument on Dr. Susan Sams' response to a hypothetical posed during cross-examination. Transcript at 225. The Court rejects Plaintiff's argument because the transcript clearly shows that Dr. Sams cited a third reason: "It's a methodology and as LEA, we determine methodology, not parents." *Id.* Indeed, Plaintiff's counsel acknowledged at the time that there were three distinct grounds. *See* Transcript at 226 (Question by Mr. Ruder: "The three reasons you gave were methodology, qualified personnel and not scientific, right?"). It is clear that the AIU never "conceded" that Conductive Education is an appropriate service for Mitchell. Rather, at all stages of the process, the AIU consistently maintained that it had the authority to determine methodology, and that Conductive Education was not necessary to provide a FAPE.

### 3. The AIU's Choice of Methodology

Decision-making authority regarding methodology has been delegated by Congress under the IDEA to the states, rather than to parents, although parents have a right to participate in the process. *Rowley*, 458 U.S. at 207-08. The duty to provide a FAPE does not require the state to maximize the educational potential of each child. *Id.* at 198-99. As explained above, Plaintiff wholly fails to address the argument that the AIU chose a methodology other than Conductive Education that was reasonably calculated to provide Mitchell with a FAPE.

The AIU, and the Hearing Officer, correctly determined Conductive Education to be a "methodology" rather than a "related service." The term "related service" is defined in IDEA, 20 U.S.C. § 1401(26):

> The term "related services" means transportation, and such developmental,

corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

The term "methodology" is not defined in the IDEA, but is based on the following discussion by the Supreme Court in *Rowley*, 458 U.S. at 207-08:

> In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child ... Therefore, once a Court determines that the requirements of the Act have been met, questions of methodology are for resolution by the states.

The proposed IEP developed for Mitchell included all the "related services" specified in the IDEA, including physical and occupational therapy. Conductive Education is not listed in the statute, and is not similar to the broad, categorical related services that are listed in the statute. Instead, Conductive Education is one of many methods that could be utilized for a child with cerebral palsy. Indeed, Plaintiff's expert, Dr. Cynthia Smith, testified at the hearing that Conductive Education was a "methodology." Transcript at 184; *see also* Transcript at 212 (Dr. Sams stating: "Conductive ed is considered a methodology and my understanding is that we as a district or MAWA are able to determine what methodologies are utilized."). The AIU determined that Conductive Education was not required for Mitchell Case because his needs

could be met in other ways.[4]  This choice of methodology is within the AIU's responsibility and authority.

   4.   The Hearing Officer's Decision

As noted above, this Court must engage in a modified de novo review of the administrative decision. The Hearing Officer determined that the AIU followed both the procedural and substantive requirements to address whether Mitchell would receive a FAPE; that the proposed IEP was reasonably calculated to provide Mitchell with a meaningful educational benefit in a preschool environment; and that the testimony presented by the AIU to show that the proposed IEP offered Mitchell a FAPE was credible.  By contrast, the Hearing Officer concluded that the testimony of Dr. Smith, on behalf of the parents, was not convincing, because she had never observed Mitchell at the AIU and was not familiar with the proposed IEP.  The Hearing Officer noted that the parents provided no evidence that Pennsylvania certifies or licenses providers of Conductive Education and actually found that Ms. Weiszhaupt was not certified or licensed.  The Hearing Officer also found that Plaintiff did not offer credible testimony to differentiate Conductive Education from the services included in the proposed IEP or any evidence to show that Conductive Education was the only means by which Mitchell could achieve progress.  The Hearing Officer found that Conductive Education is not a "related service" and concluded that the parents had "failed to demonstrate that absent the Parents'

---

[4]The AIU incorporated into the proposed IEP some of the therapeutic aides and equipment used in the Conductive Education services Mitchell had been receiving (such as musical rhythmic prompts, slatted bench and ladder) , but addressed Mitchell's adaptive, fine motor and gross motor needs through licensed occupational and physical therapists.

preferred method of Conductive Education, Mitchell will not receive a FAPE."[5] The Hearing Officer concluded that the proposed IEP provided Mitchell a FAPE without including Conductive Education.

The Court agrees with the Hearing Officer's determination on all of the referenced points. Indeed, the Court finds that the Hearing Officer's decision was careful, thorough, well-reasoned and correct.

Conclusion

AND NOW, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 16) is **GRANTED** and PLAINTIFF'S MOTION FOR DECISION ON THE ADMINISTRATIVE RECORD (Document No. 20) is **DENIED**.

Judgment shall be entered in favor of Defendant and against Plaintiff. The clerk shall docket this case closed.

SO ORDERED this 29th day of November, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

---

[5] The burden of proof is on the family, as the party challenging the IEP. *L.E.*, 435 F.3d at 391.

cc:
    Jeffrey J. Ruder, Esquire
    Email: jeffruder@gmail.com
    Maura McInerney, Esquire
    Email: mmcinerney@elc-pa.org

    Christina L. Lane, Esquire
    Email: clane@andrewsandprice.com